OPINION OF THE COURT
Jeffrey S. Sunshine, J.
*454 Defendant Nimfa Stein moves for an order declaring the prenuptial agreement between the parties invalid on the grounds that: (1) such agreement was the product of fraud, overreaching and undue influence, and (2) the agreement was not executed in accordance with the acknowledgment requirements established by Domestic Relations Law § 236 (B) (3). Plaintiff Mark Stein opposes the instant motion on the grounds that: (1) the subject agreement was not procured by fraud, overreaching or undue influence, and (2) said agreement was properly acknowledged by plaintiff subsequent to his execution of such document.
The parties were married on September 17, 1997. The instant motion concerns a prenuptial agreement dated September 16, 1997. In an affidavit submitted in support of her motion, defendant alleges that she signed the agreement at the home of Steven Elias, Esq., an attorney, in the presence of both Mr. Elias and plaintiff. She maintains that plaintiff did not sign the agreement at that time. With respect to the circumstances surrounding her execution of the agreement, she claims that she “was barely given time to review [it] . . . [and] [p]laintiff would not let [her] hold it in [her] hand while reading it but directed [that she] sign it.” Moreover, defendant states that plaintiff informed her that the wedding would not go forward unless she signed the agreement. At the time she signed the document, defendant, a Philippines national, was allegedly present in the United States illegally and, accordingly, she signed the agreement “fearing [her] illegal status in this country.”
Defendant also avers that, at the time she executed the agreement, plaintiff “hand wrote [Mr. Elias’] name in the space provided for the name of [her] attorney.” She alleges that Mr. Elias was a “long time friend” of plaintiff. She further alleges, via the affirmation of her attorney, that Mr. Elias was also a business partner of plaintiff, although she claims that she was not aware of such fact when she executed the agreement. Specifically, she alleges that Mr. Elias was the co-owner of real property also owned by plaintiff and, in 1992, he signed a general power of attorney in favor of plaintiff which defendant believes was never revoked. At the time defendant signed the agreement, Mr. Elias was also involved in “processing” her pending immigration petition.
With regard to plaintiffs execution of the agreement, defendant states that, at some point, plaintiff “purportedly signed the Agreement and on March 21, 2005, [p]laintiff s attorney of record in this action notarized his signature on a page which is *455 separate from the page on which [her] signature was acknowledged.”
In an affidavit submitted in opposition to the instant motion, plaintiff states that he gave the defendant the agreement weeks before she executed it and urged her to obtain legal representation. He claims that defendant decided to have Mr. Elias represent her with regard to the agreement and spent considerable time with him reviewing said document. He also states that defendant knew prior to signing the agreement that he and Mr. Elias were personal friends and co-owners of a residential property. He avers that, except for the ownership of such property, plaintiff did not have any business dealings with Mr. Elias, aside from some legal representation that Mr. Elias provided to him with respect to various immigration matters pertaining to his employees.
Plaintiff also states that lengthy discussions occurred between himself, defendant and Mr. Elias prior to defendant’s execution of the agreement. He also avers that defendant insisted on certain changes and additions and he agreed to one change and one additional provision, both of which were handwritten into the agreement by defendant.
With respect to his execution of the agreement, plaintiff states that he signed the agreement at the same time that defendant signed it. He does not recall why his signature was not acknowledged at the time he signed it, but “[i]t may be that [he] intended to have [his] signature acknowledged with a written certification of acknowledgment by [his] attorney the next day, because [his] then attorney, Steve Queller, Esq., was not present on September 16, 1997 when the [Ajgreement was signed.” Plaintiff states that he came across the agreement in March 2005 and realized at that time that he had not acknowledged his signature at the time he signed the agreement. He thereafter contacted Mr. Queller who referred him to his current attorney, Aaron Weitz, Esq.
In support of plaintiffs opposition to the instant motion, Mr. Weitz submits an affirmation with respect to the certificate of acknowledgment which was prepared in March 2005. He states that when plaintiff first came to see him in March 2005, his signature was on the document. However, the document was missing a certificate of acknowledgment of plaintiffs signature by a notary public. On March 21, 2005, plaintiff “reaffirmed his original signature before [Mr. Weitz] and orally acknowledged that the signature was his.” Mr. Weitz then proceeded to complete the certificate of acknowledgment as a notary public.
*456 In addition, Mr. Elias, as former “attorney,” voluntarily submits an affirmation in support of plaintiffs opposition which describes his representation of defendant and her execution of the agreement. He states that the parties arrived at his residence on September 16, 1997, and he proceeded to spend “considerable time” that evening with defendant reviewing the agreement and engaging in extensive discussions with her concerning same. He also states that defendant had “earlier requested that [he] act as her attorney for the purpose of reviewing a pre-nuptial agreement which [plaintiff] had proposed, and for [him] to explain its terms to her.” Although he did not recollect any handwritten changes being made to the document that evening, he notes that such changes do appear on the face of the document.
With respect to the execution of the agreement, he states that both parties signed it that evening and he then took the acknowledgment of defendant’s signature. He avers that the parties left with copies of the agreement and he had no further involvement in the matter.
Mr. Queller also submits an affirmation in support of plaintiff’s opposition. He states that in August 1997, at the request of plaintiff, he prepared a prenuptial agreement containing provisions which plaintiff had proposed. He gave the agreement to him and heard nothing about it “until many months later when [plaintiff] . . . mentioned to [him] that the Agreement had been signed.” Thereafter, in March 2005, plaintiff came to see him with duplicates of the agreement which contained a certificate of acknowledgment for defendant’s signature but lacked a certificate of acknowledgment with respect to the signature of plaintiff. Plaintiff allegedly explained to Mr. Queller that he had just come across the agreement among his papers and realized for the first time that the acknowledgment clause for his signature had not been completed. Thereafter, Mr. Queller referred plaintiff to Mr. Weitz and had no further involvement with the agreement.
In her answer to plaintiff’s summons and complaint for divorce, defendant asserted as affirmative defenses her claims that the agreement was procured through fraud, overreaching and undue influence and is also invalid due to plaintiffs alleged failure to comply with the acknowledgment requirements of Domestic Relations Law § 236 (B) (3).
Domestic Relations Law § 236 (B) (3) provides, in relevant part, that: “An agreement by the parties, made before or during *457 the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded.” With respect to the acknowledgment requirement, the Court of Appeals has held the following:
“The statute prescribes acknowledgment ‘in the manner required to entitle a deed to be recorded.’ This requires both that an oral acknowledgment be made before an authorized officer and that a written certificate of acknowledgment be attached (see, Real Property Law § § 291, 306). As this Court has explained, ‘[a]n instrument is not “duly acknowledged” unless there is not only the oral acknowledgment but the written certificate also, as required by the statutes regulating the subject’ (Rogers v Pell, 154 NY 518, 529 [1898]).” (Matisoff v Dobi, 90 NY2d 127, 137-138 [1997].)
Accordingly, the Court in Matisoff determined that where a marital agreement governed by Domestic Relations Law § 236 (B) (3) lacks the requisite certification, such defect cannot be rectified by the admissions of the parties in open court that the signatures on the subject document are indeed authentic (see 90 NY2d at 138). However, in reaching such decision, the Court recognized that although “a bright-line rule requiring an acknowledgment in every case is easy to apply and places couples and their legal advisors on clear notice of the prerequisites to a valid nuptial agreement,” it was “unclear whether [such] acknowledgment must be contemporaneous with the signing of the agreement” (id. at 135-136, 137). Noting that both section 236 (B) (3) and the relevant provisions of the Real Property Law governing the acknowledgment and recording of deeds do not specify when the requisite acknowledgment must be made, the Court declined to reach the issue given that the admissions by the parties in Matisoff did not, in any event, constitute a proper acknowledgment as codified by section 236 (B) (3).
Since that decision, several courts have addressed the question, as framed by the Court in Matisoff, of “whether and under what circumstances the absence of acknowledgment [in an agreement governed by section 236 (b) (3)] can be cured” (90 NY2d at 137). In Arizin v Covello (175 Misc 2d 453 [1998]), the trial court held that “an unacknowledged nuptial agreement which is acknowledged on a subsequent date is enforceable as long as the subsequent acknowledgment complies with the *458 statutory requirements of Domestic Relations Law § 236 (B) (3)” (id. at 457). In that case, the court determined that the prenuptial agreement in question was valid, even though it was undisputed that such agreement was not acknowledged by the parties when it was signed, since the parties subsequently executed a “reaffirmation” of the agreement and attached a proper certificate of acknowledgment to the reaffirmation. Subsequently, in Anonymous v Anonymous (253 AD2d 696 [1998], lv dismissed 93 NY2d 888 [1999]), the Appellate Division, First Department, revisited the issue, albeit in dicta. In that case, the Court reversed the trial court’s grant of reargument on the issue of whether the absence of an acknowledgment in a prenuptial agreement is curable, as well as its concomitant declaration, upon reargument, that the agreement was enforceable. Although the reversal was based upon the appellate court’s finding that the “motion to renew and reargue should not have been granted, based as it was on evidence, namely, a certificate of acknowledgment, that defendant could have but did not submit on the original motion,” the Court also noted that
“[i]n any event, we would not permit defendant to cure this defect in the agreement by an alleged acknowledgment in affidavit form which was executed and which surfaced some 12 years after the fact in the midst of a contested matrimonial action in light of the required formalities of Domestic Relations Law § 236 (B) (3)” (id. at 697).
Said dicta were relied upon, in part, by the Court in Schoeman, Marsh & Updike v Dobi (264 AD2d 572 [1999], lv dismissed 94 NY2d 944 [2000]). There, the Appellate Division, First Department, reversed the trial court’s denial of the plaintiff law firm’s motion for partial summary judgment dismissing defendant’s counterclaim for malpractice.[1] Defendant alleged that the plaintiff law firm had failed to request, in the underlying divorce action, the execution of a certificate of acknowledgment by the trial judge with respect to a 13-year-old postnuptial agreement between the parties to said action. The Court based its reversal, in part, on the Court’s prior “holding” in Anonymous, wherein it determined “that parties in the midst of a divorce proceeding should not be able to obtain retroactive validation of a postnuptial agreement” because the applicable acknowledgment formalities under Domestic Relations Law § 236 *459 (B) (3) require “that the parties have contemporaneously demonstrated the deliberate nature of their agreement” (264 AD2d at 573).
Subsequently, the Appellate Division, Fourth Department, addressed the issue in Filkins v Filkins (303 AD2d 934 [2003]). In that case, it was undisputed that no written certificate of acknowledgment was attached to the subject antenuptial agreement between the parties when the parties entered into the agreement. Given the lack of such certificate, the Court held that “plaintiffs attempt to cure the defect by having the agreement notarized and filed after the commencement of [the] divorce action fails because the agreement was never reacknowledged in compliance with [Domestic Relations Law] § 236 (B) (3)” (id. at 934-935). Accordingly, as a valid reacknowledgment was apparently never made, the agreement was deemed unenforceable, although the Court’s language indicated that such agreement could have been salvaged if a proper reacknowledgment — perhaps akin to the properly acknowledged “reaffirmation” made by the parties in the Arizin case — had been made at some point subsequent to the initial execution of the document in question.
Thereafter, in Hurley v Johnson (4 Misc 3d 616 [2004]), the trial court determined that a separation agreement, which had not been acknowledged in proper form as of the time plaintiff sought a so-called “conversion divorce,” was enforceable since “acknowledgments . . . were [subsequently] added to the separation agreement ... in connection with plaintiffs reapplication for divorce” and such acknowledgments complied with the requirements of Domestic Relations Law § 236 (B) (3) (id. at 617).
Finally, in the recent case D’Elia v D’Elia (14 AD3d 477 [2005]), the Appellate Division, Second Department, held that “[t]he defendant’s attempt to cure the acknowledgment defect by submitting a duly-executed certificate of acknowledgment at trial was not sufficient” where “it [was] uncontroverted that the parties’ postnuptial agreement was not properly acknowledged at the time that it was executed” (id. at 478). Accordingly, the Court found that the subject postnuptial agreement was unenforceable and the trial court, therefore, had improperly relied upon it in distributing the parties’ property.
In the instant action, this court grants defendant’s motion seeking a declaration that the subject prenuptial agreement is invalid and unenforceable. Although the Court of Appeals had *460 not yet definitively ruled on the issue, and the trial courts have reached sometimes conflicting conclusions with respect to the question, the court finds that it is bound to follow the Second Department’s holding in D’Elia that an acknowledgment defect present at the time the agreement was first executed cannot be cured by the submission to the court of a subsequently executed valid certificate of acknowledgment. Moreover, such holding also comports with the First Department’s decision in the Schoeman case, wherein that Court determined that the parties to a marital agreement shall not be able to obtain retroactive validation of such agreement by reason of a noncontemporaneous acknowledgment by one or both of the parties.
Here, it is undisputed that plaintiffs signature was not duly acknowledged pursuant to Domestic Relations Law § 236 (B) (3) contemporaneous to his execution of the agreement. Rather, a certificate of acknowledgment was not generated with respect to such signature until March 21, 2005, almost 7V2 years after the original execution of the document.[2] Accordingly, given the lack of a properly executed contemporaneous certificate of acknowledgment with respect to plaintiffs signature, the court finds that the subject agreement is unenforceable (see D’Elia, 14 AD3d at 478; accord Schoeman, Marsh & Updike, 264 AD2d at 573-574).
In addition, although plaintiff argues, via his attorney’s affirmation, that his motivation for reaffirming the 1997 signature and securing the subsequent written certification of his acknowledgment “is irrelevant to the issue at hand,” the court notes that, regardless of motivation, one potential effect of allowing such subsequent certificate of acknowledgment to stand would be the transformation of the agreement into, in essence, an “option” contract not contemplated by the parties. “[Wjhether an agreement is a binding contract or an option is to be determined like any other issue of contract interpretation from all four corners of the agreement” (Interactive Props. Corp. v Blue Cross & Blue Shield of Greater N.Y., 114 Misc 2d 255, 256 [1982]). Ordinarily, an option contract creates only a unilateral obligation for one party to hold the subject option open for a designated time period and does not transform into an enforceable bilateral contract until such option is exercised (see *461 generally Toroy Realty Corp. v Ronka Realty Corp., 113 AD2d 882, 882-883 [1985]). Stated differently, “ ‘[a]n option contract is an agreement to hold an offer open; it confers upon the optionee, for consideration . . . , the right to [exercise the option] at a later date’ ” (Broadwall Am., Inc. v Bram Will-El LLC, 32 AD3d 748, 751 [2006], quoting Leonard v Ickovic, 79 AD2d 603 [1980], affd 55 NY2d 727 [1981]; accord Boghosian v SCS Props., 299 AD2d 693, 695 [2002]).
Here, there is no indication from the terms and conditions of the agreement itself that it is to be construed as an option contract. However, were the court to allow the agreement, which would otherwise be deemed invalid due to the lack of a proper certificate of acknowledgment from the plaintiff, to become enforceable upon the provision of a certificate of acknowledgment generated some years after the initial execution of the document, such agreement, would, in effect, become enforceable only upon the exercise of plaintiffs “option” to execute a valid certificate. Given that the intent of the parties, as reflected within the “four corners” of the agreement itself, was to create an enforceable bilateral agreement, and not one only enforceable upon the exercise of an option by a putative optionee, the enforcement of such agreement, in the absence of a contemporaneous certificate of acknowledgment by plaintiff, would run counter to the “insistence upon the formalities mandated by the Legislature . . . that the parties have contemporaneously demonstrated the deliberate nature of their agreement” (Schoemann, Marsh & Updike, 264 AD2d at 573 [emphasis added]).
Accordingly, the defendant’s motion for a declaration that the agreement is invalid and unenforceable is granted.
Given that the court has found that the agreement is invalid due to the subject acknowledgment defect, it need not reach the issue of whether the agreement was procured as a result of fraud, overreaching or undue influence on the part of plaintiff.

. The legal malpractice action in question stemmed from the Matisoff v Dobi matter previously discussed in this decision.

. Although the parties proffer varying accounts of when the agreement was executed by plaintiff, the court notes that, regardless of when the agreement was signed by him, it is undisputed that said signature was not contemporaneously acknowledged.